# IN THE COURT OF APPEALS OF IOWA

No. 20-0356
Filed April 28, 2021

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**MIGUEL TOJIN CHIVALAN,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Wapello County, Kirk A. Daily, District Associate Judge.

Miguel Chivalan appeals his convictions for interference with official acts and disarming a peace officer of a dangerous weapon. **AFFIRMED.**

Dan Vondra of Vondra Law, PLC, North Liberty, and John A. Hathaway of Malott Law, PLC, Iowa City, for appellant.

Thomas J. Miller, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee.

Considered by May, P.J., and Greer and Schumacher, JJ.

**MAY, Presiding Judge.**

Miguel Chivalan appeals his convictions for interference with official acts, in violation of Iowa Code section 719.1(1)(b) (2018), and disarming a peace officer of a dangerous weapon, in violation of section 708.13. He claims the district court erred in instructing the jury. He also claims there was insufficient evidence. We affirm.

**I. Background Facts and Proceedings[1]**

On September 21, 2018, reserve Wapello County Sheriff's Deputies Jeffrey Klodt and Mark Smoot encountered a Chevrolet Captiva traveling in the opposite direction. The driver, later determined to be Chivalan, took a wide turn and almost hit the deputies' vehicle. Deputy Smoot had to come to a complete stop in order to avoid a head-on collision. Deputies Klodt and Smoot attempted to turn around to initiate a traffic stop of Chivalan's vehicle. But Chivalan was traveling at a high rate of speed, and his vehicle was no longer in sight.

A few minutes later, the deputies again found Chivalan's vehicle driving erratically. Chivalan nearly hit another vehicle in a convenience store parking lot. As Chivalan was leaving the parking lot, he pulled out in front of the deputies and another vehicle. Both vehicles had to stop in order to avoid hitting Chivalan's vehicle. The deputies turned on their overhead red and blue lights and pursued Chivalan's vehicle.

---

[1] We review the evidence in the light most favorable to the verdict. *See State v. Warren*, 955 N.W.2d 848, 856 (Iowa 2021).

Chivalan did not pull over. The speed limit in the area was thirty miles-per-hour. Dash camera footage from the chase shows the deputies' vehicle traveling over fifty miles-per-hour while pursuing Chivalan. The deputies did not catch up to Chivalan's vehicle. Due to department policy, the deputies were told not to pursue Chivalan's vehicle any further. They slowed down but continued in the direction of Chivalan's vehicle.

Soon after, Ottumwa Police Officer Jordan Staton arrived at the address listed for Chivalan's vehicle. Officer Staton observed Chivalan's vehicle come off the roadway and pull into the driveway. Officer Staton activated his overhead red and blue lights. Chivalan's vehicle then entered the garage. The garage door began to close. Officer Staton parked his patrol car in the driveway, exited his vehicle, and used his hand to stop the garage door from closing.

Three times Officer Staton told Chivalan to exit his vehicle. When Chivalan finally exited the vehicle, he refused Officer Staton's command to leave the garage and stand in front of Officer Staton's patrol car. Officer Staton then grabbed Chivalan in an attempt to pull him out of the garage. Chivalan pulled away from Officer Staton, ran to the back of the garage, and ran into the house. Officer Staton followed Chivalan into the house.

Chivalan began yelling for another individual within the house. Officer Staton deployed his taser twice, but Chivalan got back up both times. After the second time, Chivalan pulled the taser cartridge from Officer Staton's hands. This made the taser unusable. Officer Staton and Chivalan physically struggled for a short time. Officer Staton was able to push Chivalan away. Officer Staton then

drew his firearm. Chivalan ran upstairs, farther into the house. At that point, other officers arrived to assist Officer Staton. They found Chivalan in an upstairs bedroom. After more resistance, Chivalan was placed in handcuffs.

The State charged Chivalan with interference with official acts causing bodily injury, in violation of section 719.1(1)(e); disarming a peace officer of a dangerous weapon, in violation of section 708.13; and eluding, in violation of section 321.279(2). A jury convicted Chivalan of interference with official acts, disarming a peace officer of a dangerous weapon, and eluding. Chivalan appeals.

## II. Jury Instructions

We begin with Chivalan's challenge to the jury instructions. Our review is for "correction of errors at law." *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 707 (Iowa 2016) (noting we "review refusals to give a requested jury instruction for correction of errors at law").

Chivalan's challenge focuses on his convictions for disarming a police officer under section 708.13 and interference with official acts under section 719.1. Both statutes protect "a peace officer" when she or he is "in the performance of any act which is within the scope of the lawful duty or authority of that officer." Chivalan complains that the jury instructions "merely recited" this element from the statutes.[2] In Chivalan's view, "the district court needed to further define this phrase

---

[2] This requirement appeared in jury instruction 17, the marshalling instruction for disarming a peace officer. It did not appear in jury instruction 24, the marshalling instruction for interference with official acts, which only required the State to prove (1) "Chivalan knew Jordan Staton was a peace officer who was attempting to arrest him"; (2) Chivalan "knowingly resisted or obstructed Jordan Staton in arresting him"; and (3) Chivalan's actions "resulted in a bodily injury to Jordan Stanton [sic]." But this difference does not alter our analysis or ultimate conclusion.

and clarify that the officer needed to have a warrant, consent, or probable cause and exigent circumstances in order to lawfully enter [his] home and arrest him and thus be acting within the scope of the officer's lawful authority." In other words, Chivalan contends both statutes required the State to prove beyond a reasonable doubt that the officer's entry of the house was consistent with the requirements of "[t]he Fourth Amendment of the U.S. Constitution."[3] Chivalan contends the district court erred by refusing his proposed instructions, which included language addressing those requirements.[4]

We disagree. It is true the district court must "give a requested jury instruction if it correctly states the applicable law" governing a question the jury must decide "and is not embodied in other instructions." *Id.* at 707 (citation omitted). It is also true that, even when instructions "repeat[] what the statute says," they can still be inadequate if failure to define a statutory term results in an

---

[3] Chivalan also refers to the state law counterpart, "article one, section eight of the Iowa Constitution." But Chivalan does not suggest a separate state law standard. So, for ease of reference, we refer to both provisions collectively as the Fourth Amendment.

[4] For example, Chivalan's third requested instruction stated, in relevant part:

> In order for an officer to lawfully enter a home to arrest someone without a warrant and without consent:
> 1. The officer must have probable cause to believe that the person to be arrested committed a crime and is in the home;
> AND
> 2. Exigent circumstances require the officer to enter the home without a warrant.
> The term exigent circumstances describes an emergency situation that requires swift action to prevent (1) imminent danger to life or serious damage to property, or (2) the imminent escape of a suspect or destruction of evidence.

As authority for this instruction, Chivalan cited "California Jury Instruction no. 2760." We have been unable to locate this California instruction on Westlaw.

inaccurate explanation of the statute's requirements. *State v. Hoyman*, 863 N.W.2d 1, 16 (Iowa 2015); *see also State v. Soboroff*, 798 N.W.2d 1, 10 (Iowa 2011). But Chivalan has not cited, nor have we found, authority for the proposition that sections 708.13 or 719.1 require the State to prove beyond a reasonable doubt that the officer complied with the Fourth Amendment. We note also that Iowa's uniform jury instructions include no such requirements for either offense. *See* Iowa Crim. Jury Instructions 1910.1, 1930.1 (instructing on elements of interference with an official act and disarming a peace officer). While they do not bind us, "we are slow to disapprove of the uniform jury instructions." *State v. Booth-Harris*, 942 N.W.2d 562, 580 (Iowa 2020) (citation omitted). We see no reason to disapprove of them here. *See State v. Thomas*, 262 N.W.2d 607, 610 (Iowa 1978) (rejecting defendants' argument that they could not be convicted of resisting arrest because, according to defendants, their arrests were not lawful).

Based on the record and briefing before us, we do not conclude the court's instructions failed to accurately explain the statutes' requirements or that the court erred by refusing to give Chivalan's proposed instructions. *Cf. State v. Cook*, 330 N.W.2d 306, 313 (Iowa 1983) ("We do not presume error."); *State v. McFarland*, 287 N.W.2d 162, 164 (Iowa 1980) (noting "there is a presumption of regularity in trial proceedings").

## III. Sufficiency of the Evidence

Chivalan also challenges the sufficiency of the evidence supporting his convictions for interference with official acts and disarming a peace officer of a dangerous weapon. We review challenges to the sufficiency of the evidence for

corrections of errors at law. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). "Evidence is sufficient to support a conviction if, viewing it in the light most favorable to the prosecution, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Polly*, 657 N.W.2d 462, 467 (Iowa 2003) (citations omitted).

Chivalan's sufficiency-of-the-evidence challenge shares much common ground with his jury-instruction challenge. As explained, Chivalan argues the instructions were inadequate because they did not require the State to prove the officer had "a warrant, consent, or probable cause and exigent circumstances" as required by the Fourth Amendment. Likewise, for his sufficiency-of-the-evidence challenge, Chivalan claims the State did not prove that the officer had a warrant, consent, or probable cause and exigent circumstances as required by the Fourth Amendment. Therefore, Chivalan argues, there was insufficient evidence that he violated sections 708.13 and 719.1.

As discussed, however, Chivalan has not shown that the requirements of the Fourth Amendment are essential elements of sections 708.13 and 719.1.[5] Put differently, he has not shown the State was required to prove that those requirements were satisfied beyond a reasonable doubt. So even if those

---

[5] We do not belittle Chivalan's constitutional concerns. On the contrary, we gladly honor our obligation to support the federal and state constitutions. *See* Iowa Code § 63.6. At least in the current context, though, we believe constitutional challenges like Chivalan's should be addressed to the trial judge—through a motion to suppress or otherwise—not to the jury through marshalling instructions.

requirements were not satisfied, Chivalan's sufficiency-of-the-evidence challenge would still be unsuccessful.[6]

## IV. Conclusion

Chivalan has not demonstrated error in the jury instructions. Nor has he shown there was insufficient evidence to support his convictions. We affirm.

**AFFIRMED.**

---

[6] Because we do not conclude that Fourth Amendment compliance was an essential element of either statute, we need not decide whether compliance occurred. Even so, we believe the State is correct that (1) Chivalan's erratic, evasive driving created probable cause for his arrest for eluding and interfering with official acts, *see* Iowa Code §§ 321.279, 719.1, and (2) exigent circumstances existed because the officer was in "hot pursuit" when he pursued Chivalan into his garage and then beyond, *see State v. Legg*, 633 N.W.2d 763, 772 (Iowa 2001).